UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE CHARTER OAK FIRE INSURANCE COMPANY,<br><br>　　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>ARCH INSURANCE COMPANY,<br><br>　　　　　　　　　　　　Defendant. | No. 24-cv-8439<br><br><br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.:**

Before the Court is Defendant Arch Insurance Company's ("Arch") Motion to Stay (the "Motion"). ECF No. 37. The Court decides the Motion without oral argument. Fed. R. Civ. P. 78(b). For the reasons stated herein, the Motion is **GRANTED**.

## I.　　BACKGROUND

On August 13, 2024, Plaintiff Charter Oak Fire Insurance Company ("Charter Oak") filed its complaint (the "Complaint") seeking a declaratory judgment against Arch. ECF No. 1. The relief being sought stems from an action filed in New Jersey Superior Court, Middlesex County, captioned *Nancy Higgins v. Heller XIII & XIV Partnerships, LP, et al.*, Docket No. MID-L-2319-21 (the "Underlying Action"). Compl. ¶ 1. Broadly speaking, Charter Oak alleges that Arch has yet to reimburse it for expenses incurred in connection with the Underlying Action and seeks to recover the same. Compl. ¶¶ 26, 32.

### a.　The Underlying Action

The Underlying Action arose after Nancy Higgins ("Higgins") sustained injuries during a slip and fall in the parking lot of Kreilkamp Trucking, Inc. ("Kreilkamp"). Compl. Ex. C, ECF No. 1-4. Kreilkamp was insured by Arch. Compl. ¶ 12. Ms. Higgins sued Heller,[1] Charter Oak's insured, who leased the parking lot to Kreilkamp. *Id.* ¶ 16. Heller, Charter Oak claimed, qualifies as an additional insured under the insurance policy Arch issued to Kreilkamp (the "Arch Policy"). *Id.* ¶ 14. Arch, despite purportedly accepting additional insured coverage for Heller via letter dated November 3, 2021, did not participate in Heller's defense in the Underlying Action, prompting Charter Oak to defend Heller instead. *Id.* ¶¶ 23, 26.

Heller later added Kreilkamp as a third-party defendant to the Underlying Action, asserting claims for contribution and indemnification. Def.'s Br. 4, ECF No. 37-1. With the aid of a third-party administrator, Arch assigned Jonathan Springer ("Springer") of Salmon, Ricchezza, Singer & Turchi, LLP to represent Kreilkamp in the Underlying Action. Def.'s Br. Ex. C, ECF No. 37-5; Def.'s Br. Ex. E, ECF No. 37-7.

---

[1] For the sake of brevity, the shorthand "Heller" refers to both Heller XIII & XIV Partnerships, LP, and all related individuals and entities involved.

1

Higgins, Kreilkamp, and Heller settled the Underlying Action settled for $600,000 (the "Settlement"). The Settlement stipulated that Kreilkamp was at least 1% liable for Higgins's injuries, the Settlement amount was fair and reasonable, and notwithstanding this action, the Settlement could not be disputed. Def.'s Br. 4. Springer led negotiations for Kreilkamp, Def.'s Br. Ex. C, and the Settlement was placed on the record in the Underlying Action on February 3, 2025. Pl.'s Opp'n 3, ECF No. 45.

Controversy ensued. According to Arch, Springer never advised Kreilkamp or Arch of ongoing settlement negotiations. Def.'s Br. Ex. E. Counsel for Arch indicated that, after learning of the Settlement, he tried to reach Springer on multiple occasions, only to learn that he left his firm and provided no contact information. Jabbour Cert. ¶ 10, ECF No. 37-2. It further appears that subsequent efforts to contact him have been unsuccessful. Def.'s Br. Ex. E. Neither Arch nor Kreilkamp, therefore, agreed to the terms of the Settlement before it was consummated and placed on the record in the Underlying Action. Def.'s Br. 5. Arch maintains that it did not learn of the Settlement until it received notice of Higgins's motion to enforce the same. *Id.* In response, Arch successfully moved to intervene in the Underlying Action and filed an opposition to the Settlement's enforcement. *Id.* Enforcement was granted, and Arch moved for reconsideration of the issue, which was denied. *Id.*

Arch and Kreilkamp then filed notices of appeal in the Underlying Action, arguing that the trial court erred in finding that the Settlement was validly agreed to (the "Appeals"). *Id.* Arch thereafter moved the Superior Court of New Jersey's Appellate Division for a stay of the Settlement's enforcement pending its appeal. Pl.'s Opp'n Ex. 5, ECF No. 45-6. The Appellate Division denied such relief, finding that Arch failed to satisfy the standard for a stay under *Garden State Equal. v. Dow*, 216 N.J. 314, 320 (2013). *Id.* The Appeals remain pending as of the time of this Opinion.

### b. The Case at Bar

Amid this controversy, Charter Oak filed a declaratory action before this court, seeking a declaration that (1) Arch must defend Heller in the Underlying Action as an additional insured; (2) the coverage Arch provided to Heller is primary in nature; and (3) Charter Oak's obligations to Heller in the Underlying Action are "excess to proper exhaustion and full payment of the limits of the Arch Policy." Compl. ¶ 31. The parties began discovery, and the Motion followed.

## II.    LEGAL STANDARD

"The power to stay is incidental to the power inherent in every court to dispose of cases so as to promote their fair and efficient adjudication." *United States v. Breyer*, 41 F.3d 884, 893 (3d Cir. 1994). District courts have wide discretion in determining whether to impose a stay. *United States v. $1,879,991.64 Previously Contained in Sberbank of Russia's Interbank*, 185 F. Supp. 3d 493, 500 (D.N.J. 2016). In this Circuit, courts consider the following factors in deciding if a stay is warranted: (1) whether a stay would either unduly prejudice or pose a serious tactical disadvantage to the non-moving party; (2) whether denial of a stay would cause "a clear case of hardship or inequity" for the moving party; (3) whether a stay would simplify the issues in the case; and (4) whether discovery in the case is completed and/or a trial date has been set. *Akishev v. Kasputin*, 23 F. Supp. 3d 440, 446 (D.N.J. 2014) (citation modified). This is a fact-sensitive inquiry, and courts may consider other factors, including whether there is a related case pending. *See id.; Medversant Techs., LLC v. Leverage Health Sols., LLC.*, 114 F. Supp. 3d 290, 299 (E.D. Pa. 2015).

2

## III.    DISCUSSION

### a.    Undue Prejudice to the Non-Moving Party

The potential for delay alone does not establish undue prejudice. *Market-Alerts Pty. Ltd. v. Bloomberg Fin. L.P.*, 922 F. Supp. 2d 486, 494 (D. Del. 2013). A delay of indefinite duration, however, may counsel against imposing a stay. *See Stryker Trauma S.A. v. Synthes (USA)*, No. 01-cv-3879, 2008 WL 877848, at *2 (D.N.J. Mar. 28, 2008).

Arch argues that Charter Oak will neither be unduly prejudiced nor tactically disadvantaged because it seeks only a limited stay—*i.e.*, until the Appellate Division decides the Appeals. Def.'s Br. 10. Charter Oak counters that a stay would create prejudice to the extent it disrupts its reliance on this matter's scheduling order and would allow for pre-judgment interest to compound. Pl.'s Opp'n 14-15. Here, because a stay would cause only a delay of a finite duration, this factor weighs in favor of granting relief. *See Market-Alerts Pty. Ltd.*, 922 F. Supp. 2d at 494. Charter Oak's arguments to the contrary are unpersuasive.

### b.    Hardship for the Moving Party

While "[t]he mere existence of concurrent litigation" is not sufficient to satisfy a party's burden that a stay is warranted, *Akishev*, 23 F. Supp. 3d at 447, courts have held that the pendency of an active, related case could create hardship. *Stokes v. RealPage, Inc.*, No. 15-cv-1520, 2016 WL 9711699, at *1 n.1 (E.D. Pa. Jan. 25, 2016). Hardship could arise if, for example, a related case raises issues that "may impact the viability of [the present action]," *id.*, or if two related cases may subject a party to the risk of inconsistent judgments. *See Cornerstone Bldg. Brands, Inc. v. Teamsters Loc. 97 of N.J.*, No. 25-cv-13821, 2025 WL 3687894, at *6 (D.N.J. Dec. 19, 2025) (granting a stay in part to avoid the risk of inconsistent judgments).

Arch argues that, if Charter Oak renews its motion for summary judgment[2] and this Court were to grant the same, that would expose Arch to risk of an inconsistent judgment from the Appellate Division—namely, a reversal of the state court's enforcement of the Settlement. Def.'s Br. 11. The Court agrees. The Appeals challenge the validity of the Settlement. *Id.* at 5. Charter Oak's Motion for Summary Judgment seeks relief on issues that are tied to the terms of the Settlement, such as Kreilkamp's liability and Arch's indemnification obligations. ECF No. 32. Absent a stay, this could create hardship for Arch. *See Cornerstone*, 2025 WL 3687894, at *6. This factor, then, militates towards a stay.

### c.    Simplification of the Issues

Next, courts consider whether a stay would "simplify the issues and the trial of the case." *Akishev*, 23 F. Supp. 3d at 448. Where, as here, there is a related case pending, courts may stay one action where the outcome of the other "may substantially affect it or be dispositive of the issues." *Bechtel Corp. v. Local 215, Labs. Int'l Union of N. Am., AFL-CIO*, 544 F.2d 1207, 1215 (3d Cir. 1976).

---

[2] The parties squabble over Charter Oak's motion for summary judgment (the "MSJ"). ECF Nos. 32-33; Def.'s Br. 6-7, 11; Pl.'s Opp'n 8. Judge Almonte administratively terminated the MSJ due to live discovery disputes and Charter Oak's failure to comply with the undersigned's Judicial Preferences. ECF No. 33. Accordingly, the Court does not consider Charter Oak's argument that Arch's characterization of the MSJ as "premature" somehow disqualifies Arch from the stay it now seeks. Pl.'s Opp'n 8. Nor does it consider Charter Oak's broader contention that Arch's alleged pattern of misconduct is determinative of the stay request. *Id.* at 6-8.

3

Arch contends that the outcome of the Appeals will simplify the issues in this case because Charter Oak's arguments for declaratory judgment are grounded in the terms of the Settlement. Def.'s Br. 12. Charter Oak responds that its coverage claims are independent of the Settlement. Pl.'s Opp'n 16. The Court concludes that the Appellate Division's disposition of the Appeals will simplify the issues in this case. This is because, while some of Charter Oak's claims may derive from outside the terms of the Settlement, the enforceability of the Settlement and whether it was validly entered into bear on Arch's obligations to indemnify Charter Oak for services rendered in the Underlying Action. *Bechtel Corp.*, 544 F.2d at 1215. This, too, weighs in favor of a stay.

### d. Status of Discovery and Proximity to Trial

The farther along the case is, the more that weighs against a stay. *Boston Sci. Corp. v. Cordis Corp.*, 777 F. Supp. 2d 783, 788 (D. Del. 2011). While courts prefer to stay a case while it is in an early stage of litigation. "[a] case need not be in its infancy to warrant a stay." *Destination Maternity Corp. v. Target Corp.*, 12 F. Supp. 3d 762, 770 (E.D. Pa. 2014). Here, discovery is still pending, and there is no trial date set. ECF Nos. 23, 25. This counsels in favor of a stay.

### e. Other Considerations

Courts can—and should—look outside of the four *Akishev* factors in deciding whether to impose a stay. *See Akishev*, 23 F. Supp. 3d at 446. Here, Charter Oak argues that the Appellate Division has already adjudicated the Settlement's enforceability, which suggests that a stay would be inappropriate. Pl.'s Opp'n 12. The record reflects that, after Higgins moved to enforce the Settlement in the Underlying Action, Arch sought myriad relief from the trial court's ruling: opposing the motion to enforce, filing a motion for reconsideration of the same, and moving the Appellate Division for a stay pending the Appeals. Pl.'s Opp'n Exs. 2-5.

The fact that Arch's previous attempts at related relief have been unsuccessful does not mean that the Appellate Division has adjudicated the merits of Arch's appeal. Moreover, the Appellate Division ruled only that Arch has not demonstrated entitlement to a stay under the applicable New Jersey standard. Pl.'s Opp'n Ex. 5. That differs from the one this Court employs to decide the Motion. *See id.*; *Contrast Akishev*, 23 F. Supp. 3d at 446 (listing undue prejudice, hardship, simplification of issues, and progress of the case as elements for courts to consider) *with Dow*, 216 N.J. at 320 (listing irreparable harm, probability of success on the merits, and balance of hardships as elements that guide a stay decision). It cannot be said, therefore, that the Appellate Division has already decided the merits of the Appeals. Rather, the Appeals are fully briefed and awaiting oral argument. Jabbour Cert. ¶ 15. On balance, the factors suggest that a stay is warranted. The Court finds that Charter Oak's other arguments opposing a stay are without merit.

## IV. CONCLUSION

For these reasons, the Court hereby **STAYS** this matter pending the Appellate Division's resolution of the Appeals. The Court, in its discretion, declines to award attorneys' fees to either party. An appropriate order follows.

Date: May 7, 2026

_____
WILLIAM J. MARTINI, U.S.D.J.

4